UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

G&G CLOSED CIRCUIT EVENTS, LLC,

    Plaintiff,

    v.

SANDOVAL & SANDOVAL, INC.,
ELIZABETH DE SANDOVAL and
MANUEL SANDOVAL,

    Defendants.

Civil Action No. TDC-18-1026

## MEMORANDUM OPINION

Plaintiff G&G Closed Circuit Events, LLC ("G&G") alleges that Defendants Sandoval & Sandoval, Inc., Elizabeth De Sandoval, and Manuel Sandoval illegally exhibited a closed-circuit broadcast of a boxing match to which G&G owned the exclusive nationwide commercial distribution rights. G&G has asserted claims for violations of the Communications Act of 1934 ("the Communications Act"), 47 U.S.C. § 605 (2012), and the Cable Television Consumer Protection and Competition Act of 1992 ("the Cable Act"), 47 U.S.C. § 553. Pending before the Court is G&G's Motion for Summary Judgment on liability. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

G&G distributes sports and entertainment programming through closed-circuit television. It owned the exclusive commercial exhibition licensing rights to the nationwide broadcast of the

super middleweight championship fight between Saul "Canelo" Alvarez and Julio Cesar Chavez, Jr. ("the Fight") on May 6, 2017.

On May 6, 2017, the night of the Fight, Marisa Hardy, an investigator hired by G&G visited Defendants' commercial establishment, Sole E Mare Italian Restaurant ("Sole E Mare" or "the Restaurant"), in Wheaton, Maryland. As Hardy approached Sole E Mare's entrance at approximately 11:25 p.m., she observed a chalkboard in front of the restaurant with the handwritten words "*5/Mayo Chavez vs Canelo Gratis.*" Hardy Aff. at 1, ECF No. 28-4. Hardy paid no cover charge to enter. There were four televisions inside the restaurant showing the Fight. According to Hardy, restaurant patrons sitting against the wall appeared to be watching one of the televisions. Hardy counted the number of patrons inside Sole E Mare three times between her arrival and her departure from the restaurant at 12:26 a.m. on May 7, 2017. On those occasions, she counted 29, 25, and 33 patrons, respectively. Hardy also estimated that Sole E Mare had a maximum capacity of approximately 175 people.

Defendants Manuel Sandoval ("Mr. Sandoval") and Elizabeth de Sandoval ("Ms. de Sandoval") (collectively, "the Sandovals") have admitted that as of May 6, 2017, they were the owners of Sole E Mare and officers of Sandoval & Sandoval, Inc. ("the Corporation"), the corporate entity that owns Sole E Mare. However, Defendants did not purchase a license from G&G to show the Fight on the televisions at Sole E Mare. Mr. Sandoval denies that either he or Ms. de Sandoval took any action to cause the Fight to be broadcast at Sole E Mare on May 6, 2017, or that he had any prior knowledge that it would be shown at Sole E Mare that night. According to Mr. Sandoval, the Fight was ordered by an unknown individual with a credit card for residential use only, and the broadcast signal must have been sent to Sole E Mare by mistake. Defendants, however, admit that Sole E Mare's bartenders and manager act as agents on their behalf, that they

2

had the right to control Sole E Mare on May 6, 2017, and that they generally benefit from Sole E Mare's activities and profits.

In its Complaint, G&G alleges that by exhibiting the Fight without purchasing a commercial license, Defendants violated the Communications Act and the Cable Act. G&G seeks statutory damages, costs, and attorney's fees.

## DISCUSSION

In its Motion, G&G seeks summary judgment under Federal Rule of Civil Procedure 56 on liability only. G&G argues that the undisputed facts establish that all Defendants are liable under the Communications Act or the Cable Act.

## I.      Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     Statutory Provisions

In its Complaint, G&G asserted claims under both the Communications Act, 47 U.S.C. §
605, and the Cable Act, 47 U.S.C. § 553.  Although G&G does not explicitly seek summary
judgment under § 553, based on the content of its memorandum in support of the Motion, the Court
construes the Motion as seeking summary judgment under both provisions.

The Communications Act provides, in relevant part:

> No person not being authorized by the sender shall intercept any radio
> communication and divulge or publish the existence, contents, substance, purport,
> effect, or meaning of such intercepted communication to any person.  No person
> not being entitled thereto shall receive or assist in receiving any interstate or foreign
> communication by radio and use such communication (or any information therein
> contained) for his own benefit or for the benefit of another not entitled thereto.  No
> person having received any intercepted radio communication or having become
> acquainted with the contents, substance, purport, effect, or meaning of such
> communication (or any part thereof) knowing that such communication was
> intercepted, shall divulge or publish the existence, contents, substance, purport,
> effect, or meaning of such communication (or any part thereof) or use such
> communication (or any information therein contained) for his own benefit or for
> the benefit of another not entitled thereto.

47 U.S.C. § 605(a).  This provision prohibits the unauthorized interception or receipt of "digital
satellite television transmissions." *J & J Sports Prods., Inc. v. MayreallI, LLC*, 849 F. Supp. 2d
586, 588 n.3 (D. Md. 2012).

Section 553 provides that:  "No person shall intercept or receive or assist in intercepting or
receiving any communications service offered over a cable system, unless specifically authorized
to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C.
553(a)(1).

47 U.S.C. §§ 553 and 605 are strict liability statutes.  *See* 47 U.S.C. § 605(e)(3)(C)
(providing for enhanced damages for willful violations of the statute but allowing damages to be
reduced to $250 if "the violator was not aware and had no reason to believe [the] acts constituted

a violation of this section"), 47 U.S.C. § 553(c)(3)(B), (C) (providing for enhanced damages for willful violations of the statute but allowing damages to be reduced to $100 if "the violator was not aware and had no reason to believe [the] acts constituted a violation of this section"); *see, e.g.*, *G & G Closed Circuit Events, LLC v. Gonzalez Ruiz*, 379 F. Supp. 3d 1061, 1065 (S.D. Cal. 2019*)*.

Because § 605 and § 553 are strict liability statutes, G&G need only show that it had the exclusive commercial distribution rights to the Fight and that Defendants exhibited the Fight without authorization. Although G&G has not identified facts establishing whether the Fight was received by satellite transmission or cable, and therefore which specific statute is implicated, there is no claim that summary judgment cannot be granted without evidence of the specific method of interception. Indeed, G&G has offered facts, as stated in the affidavit of G&G President Nicolas Gagliardi, establishing that the methods available to intercept the Fight would be encompassed by these two categories. The Court therefore considers whether the record establishes that one or more of Defendants is liable for unlawfully broadcasting the Fight at Sole E Mare without a license.

### III.    Sandoval & Sandoval, Inc.

As to liability for the Corporation, G&G has established that it had exclusive distribution rights to the Fight, as reflected in the license agreement between G&G and the promoter of the Fight, which granted G&G an exclusive license to exhibit the Fight through closed-circuit live television at commercial outlets throughout the United States. In an affidavit, Gagliardi has confirmed that G&G had the exclusive right to license the Fight to commercial customers for exhibition.

G&G has also established that the Fight was exhibited at Sole E Mare without authorization. In her affidavit, Hardy, G&G's investigator has stated that she visited Sole E Mare

on the night of the Fight and saw the broadcast of the Fight on televisions inside the restaurant. Gagliardi confirmed in his affidavit that Defendants did not have a commercial license to exhibit the Fight.  Although Defendants have identified technical issues with Hardy's affidavit, including that the notarization of the affidavit before a Maryland notary public references that Hardy attested to its truth under "penalty of perjury under the laws of the State of California," Hardy Aff. at 2, such a scrivener's error does not undermine the validity of Hardy's statement.  On summary judgment, the court may consider a declaration made under "penalty of perjury," regardless of whether it has been notarized. *See* Fed. R. Civ. P. 56(c)(4) (permitting either an affidavit or declaration); 28 U.S.C. § 1746 (defining a declaration as a statement made "under penalty of perjury" without regard to the state).

On the substance, Defendants offer no facts to dispute Hardy's account.  Although all Defendants agree that that they did not order the Program from G&G for broadcast at Sole E Mare, they state that they have "insufficient knowledge and information to determine and/or confirm whether the [Fight] was shown" on May 6, 2017. Defs.' Resps. to Req. for Admis. No. 10, ECF No. 28-8.  While Mr. Sandoval speculates that any transmission of the Fight may have been the result of a purchase of the Fight for residential use and a mistaken broadcast on the televisions at Sole E Mare, that claim relates only to state of mind and does not undermine the fact that the Fight was actually broadcast at the Restaurant.  Thus, there is no genuine dispute that the Program was exhibited without authorization at Sole E Mare on May 6, 2017.  As a result, the facts in the record establish that the Corporation, as the owner of Sole E Mare, is liable for the unauthorized exhibition of the Fight. *See That's Entm't, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993) (holding a corporate defendant liable for the unauthorized exhibition of the broadcast of a boxing match to patrons at its commercial establishment); *J & J Sports. Prods., Inc. v. Get Away Lounge, Inc.*, No.

6

TDC-13-3064, 2015 WL 4638060, at *2-3 (D. Md. July 30, 2015) (same); *Joe Hand Promotions, Inc. v. Dock Street Enters., Inc.*, No. WMN-11-1973, 2011WL6141058, at *4 (D. Md. Dec. 8, 2011) (finding a corporate defendant liable for the unauthorized exhibition of an ultimate fighting championship broadcast and rejecting the defendants' good faith defense as inapplicable because the statute provides for strict liability).   The Court will grant the Motion as to Sandoval & Sandoval, Inc.

## IV.   Individual Defendants

G&G also seeks summary judgment as to liability against Mr. Sandoval and Ms. de Sandoval in their individual capacities. For violations of § 605 or § 553 by an individual officer or employee of a corporation, courts have typically adopted the test for vicarious liability used in the context of copyright infringement. *See, e.g., MayrealII*, 849 F. Supp. 2d at 589 & n.5.  Under *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955 (2d Cir. 1997), frequently cited in § 605 and § 553 cases, a plaintiff must prove that the individual had both a "right and ability to supervise that coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *Id.* at 971 (citations omitted); *accord CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (stating that vicarious liability may be imposed in a copyright infringement action because "a defendant who has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities is . . . liable") (citations omitted).   Courts have since articulated the test in broadcast piracy cases to require plaintiffs to show: (1) a "right and ability to supervise the violative activity, although [defendants] need not actually be supervising because [they] need not know of the violative activity," and (2) "a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *J & J Sports Prods., Inc. v.*

*Ramsey*, 757 F. App'x 93, 95-96 (3d Cir. 2018) (collecting cases); *see also J & J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 801-02 (10th Cir. 2016) (observing courts' tendency to require a showing of the right and ability to supervise the violations, and an obvious and direct financial interest in the piracy, in § 605 cases involving both a corporate defendant and an individual defendant) (citations omitted).

Here, the Sandovals do not dispute that they are the owners and officers of Sandoval & Sandoval, Inc., the corporate owner of Sole E Mare. Significantly, both also admit that they had a right to control the Restaurant, and that Sole E Mare employees, such as the bartenders and manager, serve as their agents. It is not material that the Sandovals deny being present at the Restaurant when the Fight was shown or authorizing its exhibition because actual knowledge or supervision of the violation is not required for vicarious liability to attach. *Ramsey*, 757 F. App'x at 95-96.

Likewise, Mr. Sandoval's unsupported assertion in his affidavit that the Fight "was purchased for residential use only, by credit card" and thus must have been broadcast at Sole E Mare by mistake, Manuel Sandoval Aff. ¶¶ 9-10, ECF No. 31-2, does not create a genuine issue of material fact. First, because broadcasting the Fight at the Restaurant without a commercial license would still be unlawful, and the Sandovals undisputedly had the right to control the premises, they would still be liable. See *Ramsey*, 757 F. App'x at 95-96. Second, where it was undisputed that Sole E Mare had put a sign in front of the Restaurant advertising the broadcast of the Fight that evening, thus establishing that management plainly intended to have the Fight shown at the Restaurant that night, this claim that the broadcast signal was mistakenly transmitted to the Restaurant rather than an unidentified residence is squarely refuted such that no reasonable factfinder could accept it. Because the Sandovals had the right and ability to supervise and control

8

activities at Sole E Mare, including on the night that the Fight was shown on the televisions at the Restaurant, the first prong of the test for vicarious liability is satisfied.

The Sandovals further admit that they benefit financially from Sole E Mare's activities and profits. While they deny that they received any financial benefit specifically from the broadcast of the Fight on May 6, 2017, they admit that Sole E Mare exhibits television programming believed to be of interest to Restaurant patrons for their viewing pleasure. Where it is undisputed that Sole E Mare placed a sign in front of the Restaurant advertising the Fight, between 25 and 33 patrons were in the Restaurant during the Fight, and some were observed by the investigator to be watching the Fight on the Restaurant's televisions, there is no genuine issue of material fact whether the Sandovals, as the owners of Sole E Mare who generally benefit financially from the Restaurant's activities, had a direct interest in the financial benefits of the broadcast, such as food and drink expenditures made by patrons watching the Fight. *See Brady*, 672 F. App'x at 802 (finding that the defendant had an obvious and direct financial interest in beer sales to bar patrons on fight night when an unauthorized exhibition occurred). These financial benefits flow from the broadcast of the Fight, even if "not precisely calculable." *Ramsey*, 757 F. App'x at 95-96. Therefore, the record provides sufficient evidence to conclude that the Sandovals had a direct financial interest in the broadcast of the Fight such that the second prong of the test for vicarious liability has been met. The Court will thus grant summary judgment against Mr. Sandoval and Ms. de Sandoval as to liability.

**CONCLUSION**

For the foregoing reasons, G&G's Motion for Summary Judgment is GRANTED.   A separate Order shall issue.


Date: October 10, 2019

THEODORE D. CHUANG
United States District Judge